UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ARYASP NEJAT,<br><br>    Plaintiff,<br><br>  v.<br><br>DELTA AIR LINES, INC.,<br><br>    Defendant. | CASE NO.<br><br>**COMPLAINT** |

# I. INTRODUCTION

1. Plaintiff Aryasp Nejat (Nejat) brings this action against Delta Air Lines, Inc. (Delta) for compensatory and punitive damages, backpay and front pay, reinstatement, appropriate affirmative action, declaratory and injunctive relief, and other relief as the Court may deem just and proper for violations of the Railway Labor Act (RLA), 45 U.S.C. § 151, et seq.; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., the Washington Law Against Discrimination (WLAD), RCW 49.60, and the Silenced No More Act, RCW 49.44.211.

# II. JURISDICTION AND VENUE

2. This Court has original jurisdiction over the federal RLA and Title VII claims pursuant to 28 U.S.C. §§ 1331, 1343, and 1337.

COMPLAINT– Page 1

3. This Court has original jurisdiction over the state WLAD and Silenced No More Act claims pursuant to 28 U.S.C. § 1332.

4. The Court also has supplemental jurisdiction over those state claims pursuant to 28 U.S.C. § 1367 because the state claims form part of the same case or controversy as do the federal claims.

5. This Court may exercise personal jurisdiction over Delta, which maintains substantial operations at the Seattle–Tacoma (SeaTac) Airport (located within the Western District of Washington). Delta's contacts within this district are sufficiently continuous and systematic as to render it at home within this judicial district. Additionally, the claims at issue here arise substantially from Delta's activities that occurred within this judicial district.

6. On July 2, 2024, the U.S. Equal Employment Opportunity Commission (EEOC) issued Nejat a Determination and Notice of Rights, informing him of his right to sue Delta. Nejat files this complaint within 90 days of his receipt of that notice.

7. Venue lies in this district under 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3) because Delta resides in this district and the unlawful employment practices Nejat complaints of occurred within this district and, on information and belief, the employment records relevant to those practices are maintained and administered within this district.

### III. PARTIES

8. Plaintiff Aryasp Nejat is a citizen of Arizona who resides in Gilbert, Arizona. He worked as a flight attendant for Delta from on or about May 1, 2023, when he began his training, until Delta terminated his employment on August 16, 2024. Following the completion of his training in June 2023, Nejat was domiciled at the Delta flight attendant base at SeaTac airport in Washington.

COMPLAINT– Page 2

9. Nejat is an employee covered by the RLA (45 U.S.C. § 181), an "employee" under Title VII (42 U.S.C. § 2000e(f)), a person covered by the WLAD (RCW 49.60.180), and an "employee" under the Silenced No More Act (RCW 49.44.211(8)).

10. Defendant Delta is an airline headquartered in Atlanta, Georgia. Since in or around 2022, Delta has maintained a base of operations at the SeaTac airport in SeaTac, Washington.

11. Delta is a common carrier by air within the meaning of Section 201 of the RLA. 45 U.S.C. § 181.

12. Delta is an "employer" within the meaning of Title VII (42 U.S.C. § 2000e(b)).

13. At all relevant times, Delta has had more than 500 employees.

14. Delta is an "employer" within the meaning of the WLAD (RCW 49.60.040(11)).

15. Delta is an "employer" within the meaning of the Silenced No More Act (RCW 49.44.211).

## IV. FACTS

16. Although Delta's pilots and dispatchers are represented by labor unions, the vast majority of Delta's employees are not represented by any labor union. On information and belief, approximately 80% of Delta's employees are non-union. Delta's approximately 28,000 flight attendants are currently one of its non-union work groups.

17. Delta works hard—and devotes substantial resources—to keep its flight attendants, and other employees, non-union.

18. For example, it has long maintained an Employee Involvement Group (EIG), in part to avoid unionization. And it has actively opposed prior campaigns by the Association of Flight Attendants (AFA) to organize Delta's flight attendants and become their bargaining representative.

COMPLAINT– Page 3

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

19. More recently, in or around November 2022, Delta's flight attendants, fleet service workers, and technicians announced a coordinated campaign to organize those work groups. As recognized in a May 15, 2024, letter from 25 United States Senators, Delta has engaged in a fierce "unionbusting" campaign in response to the current organizing drive, including by distributing anti-union literature, hosting an anti-union website (www.onefutureonedelta.com), threatening to terminate employees' benefits, and taking other anti-union actions. When Senators called upon Delta by letter dated May 15, 2024, to implement a neutrality agreement with regard to those organizing efforts, Delta refused to do so and instead has continued its virulent anti-union campaign.

20. Aryasp Nejat is one of the latest casualties of Delta's anti-union campaign.

21. By letter dated February 9, 2023, Delta made Nejat an offer of employment, conditioned on his completing training.

22. Nejat attended training in Atlanta, Georgia, from May 1, 2023, through his graduation on or about June 9, 2023.

23. During that training, Delta subjected him and other flight attendants to mandatory meetings at which Delta officials and agents made false, misleading, and coercive statements about AFA and otherwise spouted anti-union views.

24. During the training, Delta set up an anti-union hub with a large banner that read "Don't Risk It, Don't Sign It, Get the Facts About AFA."

25. Delta also handed out treats during training to any flight attendant who stopped at tables where Delta's agents were describing its anti-union campaign, "One Future One Delta."

26. On or around June 9, 2023, Nejat graduated from Delta's flight attendant training program. At the graduation ceremony, another flight attendant, Matthew Miller, made a speech

COMPLAINT – Page 4

in which he told the graduates that if they wanted a good working environment, they should not sign a union card.

27. Although Miller is purportedly a rank and file flight attendant, he appeared to be speaking with authority Delta had cloaked him in, as only a select number of flight attendants, such as Miller, were given the opportunity to address the training class graduates.

28. During a practice for the graduation ceremony, Miller performed a uniform inspection on Nejat. During that inspection, Miller engaged in non-consensual, sexually assaultive touching of Nejat with Miller's hands reaching inside Nejat's pants close to his genitals and then moving to underneath Nejat's vest and against Nejat's chest. The experience made Nejat feel violated, uncomfortable, and anxious.

29. During that same uniform inspection Miller also engaged in non-consensual, sexually assaultive touching of another male flight attendant trainee, who related the experience to Nejat shortly after it happened.

30. Shortly after the graduation ceremony, Nejat discussed his experience with yet another male flight attendant, who also observed Miller touching flight attendants inappropriately during the graduation ceremony.

31. On information and belief, several male flight attendants have experienced similar treatment at the hands of Miller.

32. Nejat did not immediately report Miller's inappropriate behavior to management because Nejat observed that Miller appeared to be favored by Delta management and to have authority to exercise managerial prerogatives, including recruiting flight attendants Miller selected for special opportunities such as participation in Delta's In-Flight Safety videos. (In-Flight Services is the name of the flight attendant department at Delta.) These opportunities

COMPLAINT– Page 5

carried with them premium pay and career advancement. On information and belief, Miller and other Delta agents provided these select opportunities to flight attendants who vocally opposed unionizing, and not to AFA supporters.

33. On July 20, 2023, Nejat signed an authorization card expressing his support for AFA's representation of Delta's flight attendants.

34. Between July 20, 2023, and the end of Nejat's employment in August 2024, Nejat engaged in a number of actions that put Delta on notice that he supported AFA and actively participated in its efforts to organize Delta's flight attendants.

35. For example, in October 2023, Nejat attended a Delta-sponsored event in Los Angeles, California, called "Velvet." During the event, Delta CEO Ed Bastian gave a speech. After his speech, Nejat asked Bastian questions about Delta's decision to sell routes to partner airlines instead of Delta operating the routes itself. This issue was a well-known concern of the AFA organizing drive because, by letting others operate routes traditionally flown by Delta, there are fewer flying opportunities—and, thus, potentially fewer jobs—for Delta flight attendants. CEO Bastian responded that doing so is profitable for Delta.

36. Nejat also posted a number of messages or comments on SkyHub—Delta's internal communications platform—expressing concerns for flight attendant working conditions and support for organizing with AFA to improve those working conditions.

37. Nejat made one of those SkyHub comments in December 2023. In that post, Nejat expressed concern that Delta used shabbier aircraft on routes to South America, thus affecting flight attendants' working conditions on those flights, whereas it sent its newest and nicest aircraft on routes to Europe. Delta removed the comment.

COMPLAINT– Page 6

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

38. On or around December 31, 2023, Delta's Senior Base Manager, In-Flight Services, Robert Dykehouse called Nejat while Nejat was on vacation in Buenos Aires, Argentina. After apologizing for interrupting Nejat's vacation, Dykehouse denied Delta, in fact, sent shabbier aircraft on its South American routes. Nejat told him he had based his comment on his own experience and the experience of other flight attendants he had worked with and, if he was mistaken, he would love to see data from network planning to help him understand why. Dykehouse told Nejat he would get back to him. Dykehouse never provided Nejat that data.

39. At that point, Nejat thought the issue was resolved.

40. On or about March 14, 2024, Nejat saw Senior Base Manager Dykehouse in a crew lounge at SeaTac. At the time, Nejat was visibly displaying an AFA pin on his vest pocket, to express his support for AFA's organizing drive. Nejat approached Dykehouse to ask about his attendance record. Nejat had noticed that his employment records incorrectly showed several late sign-ins, and Nejat explained he had evidence showing either he was not late or his lateness was excused. Nejat accordingly asked Dykehouse to correct the errors. Throughout that brief conversation, Dykehouse repeatedly stared at Nejat's AFA pin before briefly making fleeting eye contact with Nejat while they talked. The conversation ended quickly.

41. Later that day, Dykehouse approached Nejat in the crew lounge. Dykehouse then told Nejat that Delta has an open door policy and, should Nejat have additional concerns like the ones he had raised in his December 2023 SkyHub comment, Nejat should feel free to talk directly with management. Dykehouse did not say Nejat's comment was inappropriate or inflammatory.

42. On April 22, 2024, Nejat posted a comment on a private Facebook page, "Aft-Galley," in response to posts by other flight attendants.

COMPLAINT– Page 7

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

43. Specifically, another flight attendant first posted a question, asking "What does One Delta do?" "One Delta" is shorthand for Delta's anti-union campaign, "One Future. One Delta." Another flight attendant responded that they—Delta managers and the anti-union flight attendants who support management—"drink the 'free' drinks at the EIG and Velvet events?!" This comment implied that Delta's drinks are not really free because they are purchased at the cost of support for AFA.

44. Nejat responded "they yell at us and call us ungrateful pigs when we're not pissing our pants from excitement that we got $1–2 raises." This comment referred to Delta's recent announcement that it was increasing flight attendant wages by 5%—an action many pro-union supporters felt was a far inadequate response to flight attendants' needs and an effort to try to stave off an organizing drive.

45. Another flight attendant responded: "Interesting. How much does the company pay them? I'm not a Dorito, btw. We have the same issue at OO. That's why I'm curious." Here, "Dorito" refers to a Delta flight attendant, and "OO" refers to SkyWest, another non-union airline.

46. Nejat responded: "the company favors them [i.e., the anti-union flight attendants]. For example, the safety videos? You have to be part of the anti-union cult group to even be considered for those. Many of the special assignment roles and opportunities for moving into the companies become closed off if they find out you are pro-union. And guess what, there's no union so it's really hard to do anything to prove retaliation."

47. Another flight attendant then mentioned Matthew Miller, as a flight attendant who champions Delta's One Delta campaign and controls access to the safety video opportunities.

COMPLAINT– Page 8

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

48. Nejat then responded that he, Miller, "sexually harasses attractive male FAs via quid pro quo agreements to put them in safety videos & promotional materials."

49. Nejat made these comment under an alias, Carson Hayes. He used that alias out of fear that Delta would retaliate against him for supporting AFA and objecting to Miller's sexual harassment. That fear, unfortunately, proved well grounded.

50. On April 23, 2024, Nejat noticed that his comments had been removed from Aft-Galley.

51. On April 25, 2024, Nejat commented on SkyHub under his own name in response to a post that complained about Delta's discriminatory treatment of pro-union employees.

52. Specifically, Nejat commented:

> This is amazing and summarizes exactly how I feel. I'm so so so upset as a 1 year FA at how Delta treats us when we have legitimate concerns. I feel like the moderators here on WP [a component of SkyHub] and the leaders in the company at events like Velvet shove our legitimate concerns under the rug while they enjoy their bonuses & stock options from the company's profitability, that would not be possible without the hard work we put in everyday. I also don't appreciate all this RHI ["Rumor Has It" emails sent by Delta managers as part of its One Delta campaign] and propaganda being shoved into by work inbox. It's insensitive and it shows that our concerns are just being ignored and argued against instead of truly taken into consideration. I feel like this has become a hostile work environment for me and I'm slowly not enjoying being in this environment as much because of it, which is sad because I love Delta and the brand a lot.

53. Delta suspended and ultimately terminated Nejat for his April 22 and 25, 2024, posts expressing support for organizing through AFA and opposing sexual harassment.

54. On May 17, 2024, Nejat attended a meeting with Field Service Manager, IFS–Seattle, Jeffrey Bligh-Jones and Base Manager Iris Park. During that meeting, Nejat reiterated his concerns that Delta management was sweeping legitimate employee concerns about wages and working conditions under the rug. The managers asked Nejat about his recent Aft-Galley and SkyHub posts, and Nejat truthfully answered that those were his posts. He also explained

COMPLAINT– Page 9

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

that, for the Aft-Galley post, he used the alias "Carson Hayes" because he was afraid of retaliation, including because of the sexual harassment he had previously experienced at graduation by Miller.

55. Park responded that Delta would investigate Nejat's report that Miller had sexually harassed him. Meanwhile, though, Park informed Nejat that it would suspend him without pay for making the two pro-union, anti-harassment posts.

56. Delta, through Park and Bligh-Jones, accordingly removed Nejat from flying duties, including his trip scheduled that day to Seoul, South Korea.

57. On May 21, 2024, Bligh-Jones informed Nejat that an investigator would contact him regarding his report that Miller had sexually harassed him. Bligh-Jones also assured Nejat that the two investigations—Delta's investigation into Nejat's posts and into his report of Miller's sexual harassment—would be treated separately.

58. In fact, on June 4, 2024, Matthew Morrison (a Delta Human Resource Manager) and Iris Park—the same Base Manager who had suspended Nejat on May 17 for his pro-union, anti-sexual harassment posts—contacted Nejat to talk with him about his report of Miller's harassment.

59. The three of them spoke for approximately an hour. During that call, Morrison asked Nejat what happened at the graduation ceremony where Miller harassed Nejat. Nejat described the events.

60. At the end of the meeting, Morrison and Park told Nejat that they would set up another meeting to follow up with him on Delta's investigation into Miller. They did not do so.

COMPLAINT– Page 10

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

61. On information and belief, Delta has not disciplined Miller or taken any action against him for harassing Nejat.

62. Instead, on June 6, 2024—two days after Nejat provided Delta details of Miller's harassment in the June 4 meeting—Bligh-Jones informed Nejat that Delta was suspending him indefinitely.

63. On August 16, 2024, Delta terminated Nejat's employment.

64. Delta has never offered Nejat any explanation of the reasons for its suspension and eventual termination of him, other than its intolerance for his pro-union, anti-sexual-harassment posts.

## V. FIRST CAUSE OF ACTION
## RETALIATION IN VIOLATION OF THE RAILWAY LABOR ACT

65. Plaintiff Nejat incorporates by reference all preceding paragraphs of the Complaint as if fully set forth herein.

66. Delta is a common carrier by air within the meaning of Section 201 of the RLA. 45 U.S.C. § 181.

67. Section 2, Third, of the RLA prohibits carriers from interfering, influencing, or coercing employees in their choice of labor representatives. 45 U.S.C. § 152, Third. It declares: "no carrier shall, by interference, influence, or coercion seek in any manner to prevent the designation by its employees as their representatives of those who or which are not employees of the carrier."

68. Section 2, Fourth, of the RLA elaborates and expands upon the rights to organize set forth under Section 2, Third. It announces: "Employees shall have the right to organize and bargain collectively through representatives of their own choosing." 45 U.S.C. § 152, Fourth. It adds:

COMPLAINT– Page 11

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

> No carrier, its officers, or agents shall deny or in any way question the right of its employees to join, organize, or assist in organizing the labor organization of their choice, and it shall be unlawful for any carrier to interfere in any way with the organization of its employees, … or to influence or coerce employees in an effort to induce them to join or remain or not to join or remain members of any labor organization, … .

*Id*.

69. Delta has violated Sections 2, Third and Fourth, in several ways.

70. It has denied Nejat and other flight attendants who support efforts to organize with AFA the premium pay and career-advancement opportunities associated with special assignments, such as Safety Videos, Delta routinely affords to anti-union flight attendants.

71. It has removed pro-union messages from SkyHub while allowing anti-union flight attendants to post on SkyHub and promoting their messages on that platform.

72. It has enforced its social media policies in an uneven and discriminatory way, favoring anti-union messages while punishing pro-union flight attendants who post otherwise similar pro-union messages.

73. It has suspended and ultimately terminated Nejat's employment in retaliation for expressing his support of flight attendants seeking to choose AFA as their labor representative.

74. Through these actions, Delta has interfered with, improperly influenced, and coerced Nejat and other flight attendants in the exercise of their efforts to select representatives of their choosing, in violation of Section 2, Third of the RLA.

75. Through these actions, Delta has questioned Nejat's and other flight attendants' right to organize with the union of their choice, and has unlawfully interfered with, influenced, and coerced Nejat and other flight attendants in an effort to induce them not to join AFA.

76. To remedy these violations, Nejat is entitled to reinstatement with backpay, compensatory damages, a declaration that Delta has unlawfully retaliated against Nejat for

supporting AFA as his bargaining representative, an injunction preventing Delta from retaliating against Nejat or other AFA supporters, and other appropriate relief.

### VI. SECOND CAUSE OF ACTION
### SEXUAL HARASSMENT IN VIOLATION OF TITLE VII

77. Plaintiff Nejat incorporates by reference all preceding paragraphs of the Complaint as if fully set forth herein.

78. Section 702(a) of Title VII of the Civil Rights Act of 1964 makes it an unlawful employment practice for an employer to "discriminate against an individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's … sex … ." 42 U.S.C. § 2000e-2(a).

79. Title VII thus prohibits sexual harassment, including same-sex sexual harassment.

80. Unlawful harassment is unwelcome sex-based conduct that is severe or pervasive.

81. On information and belief, Miller is empowered by Delta to offer flight attendants special assignments, with premium pay and career-advancement opportunities.  Miller has used the power to make those special assignments to obtain sexual favors. That is sexual harassment barred by Section 702 and its resulting jurisprudence.

82. In addition, Miller's inappropriate, nonconsensual sexual touching of Nejat and others during graduation constituted hostile environment harassment.

83. Cloaked in Delta's authority, Miller functioned during graduation and in respect to doling out special assignments as a de facto supervisor.

84. Miller's inappropriate, nonconsensual touching of Nejat inside his pants and under his vest during graduation was sufficiently severe that, standing alone, it altered Nejat's terms and conditions of employment based on sex.

COMPLAINT– Page 13

85. Additionally, and alternatively, on information and belief, Miller has used his position overseeing graduation functions and providing special assignments to inappropriately touch other male flight attendants in a sexual manner on several other occasions. That conduct is sufficiently pervasive as to alter Nejat's terms and conditions of employment based on sex.

86. Delta authorized Miller's sexually harassing conduct, or alternatively, did not exercise reasonable care to prevent and correct it. Delta ratified Miller's sexual harassing conduct by conducting a perfunctory investigation into Nejat's complaint that resulted in no discipline or adverse action against Miller and allowed him to continue sexually harassing other male flight attendants.

87. To remedy these violations, Nejat is entitled to reinstatement with backpay, compensatory damages, a declaration that Delta has unlawfully sexually harassed Nejat, an injunction preventing Delta from doing so again, and other appropriate relief.

88. Delta's conduct was intentional and done with malice or reckless indifference to Nejat's rights. He is thus entitled to punitive damages under 42 U.S.C. § 1981a.

## VII. THIRD CAUSE OF ACTION
## RETALIATION FOR OPPOSING UNLAWFUL SEXUAL HARASSMENT IN VIOLATION OF TITLE VII

89. Plaintiff Nejat incorporates by reference all preceding paragraphs of the Complaint as if fully set forth herein.

90. Section 704(a) of Title VII makes it "an unlawful employment practice for an employer to discriminate against any of his employees … because he has opposed any practice made an unlawful employment practice [under Title VII] … ." 42 U.S.C. § 2000e-3(a).

91. Nejat opposed Miller's sexual harassment of him and other flight attendants. He did so through his April 22, 2024, Aft-Galley comments and other social media exchanges and other communications with other Delta flight attendants and again through his reports to Delta

COMPLAINT– Page 14

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

management on May 17 and June 4, 2024, launching an investigation into Miller's sexual harassment.

92. Miller's sexual harassment of Nejat and other flight attendants was, on information and belief, sufficiently severe and pervasive and known to Delta, as to be an unlawful employment practice prohibited by Title VII. At a minimum, Nejat had a reasonable, good-faith belief that Miller's sexual harassment of him and other flight attendants was an unlawful employment practice prohibited by Title VII.

93. Delta suspended and ultimately fired Nejat, in part, because of his opposition to Miller's sexual harassment. On information and belief, Delta has long treated Miller as a flight attendant with managerial responsibilities and Nejat's report against Miller threatened Delta's ability to continue its favored treatment of Miller. To protect its favored employee, Delta punished Nejat for opposing Miller's harassment.

94. To remedy these violations, Nejat is entitled to reinstatement with backpay, compensatory damages, a declaration that Delta has unlawfully punished Nejat for reporting sexual harassment, an injunction preventing Delta from doing so again, and other appropriate relief.

95. Delta's conduct was intentional and done with malice or reckless indifference to Nejat's rights. He is thus also entitled to punitive damages under 42 U.S.C. § 1981a.

### VIII. FOURTH CAUSE OF ACTION
### SEXUAL HARASSMENT IN VIOLATION OF WLAD

96. Plaintiff Nejat incorporates by reference all preceding paragraphs of the Complaint as if fully set forth herein.

97. WLAD prohibits employers from discharging "any person from employment because of" sex or sexual orientation. RCW 49.60.180.

COMPLAINT– Page 15

98. WLAD thus prohibits unwelcome verbal or physical conduct based on sex or sexual orientation that is sufficiently severe or pervasive to alter employment conditions and create an abusive working environment.

99. Here, Miller's inappropriate, nonconsensual sexual touching of Nejat during graduation were sufficiently severe as to alter Nejat's working conditions and create an abusive working environment.

100. Additionally, and alternatively, on information and belief, Miller has used his position overseeing graduation functions and providing special assignments to inappropriately touch other male flight attendants in a sexual manner on several other occasions. That conduct is sufficiently pervasive as to alter Nejat's terms and conditions of employment based on sex.

101. Miller's actions can be imputed to Delta because Delta put Miller in a position of special authority in respect to the flight attendant graduation and doling out special assignments.

102. Alternatively, Miller's actions can be imputed to Delta because it knew or should have known of Miller's harassment and did not take reasonable care in preventing it.

103. To remedy these violations, Nejat is entitled to recover his actual damages, including reinstatement with backpay, compensatory damages, a declaration that Delta has unlawfully sexually harassed Nejat, an injunction preventing Delta from doing so again, and other appropriate relief.

**IX. FOURTH CAUSE OF ACTION
RETALIATION FOR OPPOSING UNLAWFUL SEXUAL HARASSMENT IN VIOLATION OF WLAD**

104. Plaintiff Nejat incorporates by reference all preceding paragraphs of the Complaint as if fully set forth herein.

COMPLAINT– Page 16

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

105. WLAD makes it an unfair practice for any employer to "discharge or otherwise discriminate against any person because he or she has opposed any practices forbidden by this chapter … ." RCW 49.60.210(1).

106. Nejat opposed Miller's sexual harassment of him and other flight attendants. He did so through his April 22, 2024, Aft-Galley comments, though his social media and other communications with Delta flight attendants, and again through his reports to Delta management on May 17 and June 4, 2024, launching an investigation into Miller's sexual harassment.

107. Miller's sexual harassment of Nejat and other flight attendants was, on information and belief, sufficiently severe and pervasive and known to Delta, as to be an unlawful employment practice prohibited by WLAD. At a minimum, Nejat had a reasonable, good-faith belief that Miller's sexual harassment of him and other flight attendants was an unlawful employment practice prohibited by WLAD.

108. Delta suspended and ultimately fired Nejat, in part, because of his opposition to Miller's sexual harassment. On information and belief, Delta has long treated Miller as a flight attendant with managerial responsibilities and Nejat's report against Miller threatened Delta's ability to continue its favored treatment of Miller. To protect its favored employee, Delta punished Nejat for opposing Miller's harassment.

109. To remedy these violations, Nejat is entitled to recover his actual damages, including reinstatement with backpay, compensatory damages, a declaration that Delta has unlawfully punished Nejat for reporting sexual harassment, an injunction preventing Delta from doing so again, and other appropriate relief.

COMPLAINT– Page 17

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

## X. FIFTH CAUSE OF ACTION
## SILENCED NO MORE ACT

110. Plaintiff Nejat incorporates by reference all preceding paragraphs of the Complaint as if fully set forth herein.

111. The Silenced No More Act prohibits employers from discharging, discriminating against, and retaliating against "an employee for disclosing or discussing conduct that the employee reasonably believed to be illegal harassment, illegal discrimination, illegal retaliation … or sexual assault, that is recognized as illegal under state, federal, or common law … occurring in the workplace, at work-related events coordinated by or through the employer, between employees, or between an employer and an employee, whether on or off the employment premises." RCW 49.44.211(3).

112. Nejat disclosed and discussed Miller's sexual harassment of him and other flight attendants through his April 22, 2024, Aft-Galley comments, though his social media and other communications with Delta flight attendants, and again through his reports to Delta management on May 17 and June 4, 2024, launching an investigation into Miller's sexual harassment.

113. Nejat reasonably believed Miller's conduct to be illegal harassment under state and federal law.

114. Miller's conduct occurred in the workplace and at work-related events coordinated by Delta. It is also conduct that occurred between employees.

115. Delta suspended and ultimately terminated Nejat for disclosing and discussing that conduct.

116. Doing so violated the Silenced No More Act.

COMPLAINT– Page 18

117. Through his April 22, 2024, Aft-gally comments, his April 25, 2024, SkyHub comment, and other communications with Delta flight attendants, Nejat also disclosed and discussed conduct that he reasonably believed to be illegal retaliation for union organizing activities, and that retaliation is recognized as illegal under the RLA.

118. Delta's retaliatory conduct occurred in the workplace and at work-related events coordinated by Delta.

119. Delta suspended and ultimately terminated Nejat for disclosing and discussing that conduct.

120. Doing so violated the Silenced No More Act.

121. To remedy these violations, Nejat is entitled to reinstatement with backpay, compensatory damages, a declaration that Delta has unlawfully punished Nejat for disclosing and discussing sexual harassment, an injunction preventing Delta from doing so again, and other appropriate relief.

## XI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment as follows:

A. Declare that Delta has violated the RLA, Title VII, the WLAD, and the Silenced No More Act through the conduct alleged in this Complaint.

B. Enjoin and permanently restrain these violations of the RLA, Title VII, the WLAD, and the Silenced No More Act.

C. Order Delta to put Nejat into the position he would have held but for Delta's discriminatory, retaliatory, and otherwise unlawful treatment of him, and make him whole for all earnings he would have received but for Delta's unlawful conduct, including without limitation wages, seniority, other lost benefits, and pre- and post-judgment interest.

COMPLAINT– Page 19

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

D. Order Delta to make Nejat whole by providing compensation for past and future pecuniary losses resulting from the unlawful conduct challenged in this lawsuit, in amounts to be determined at trial.

E. Order Delta to make Nejat whole by providing compensation for past and future non-pecuniary losses—including, pain, suffering, and emotional distress—resulting from the unlawful conduct challenged in this lawsuit, in amounts to be determined at trial.

F. Order Delta to pay Nejat punitive damages for its malicious, oppressive, or reckless conduct, in amounts to be determined at trial.

G. If less than the actual damages proven at trial, order Delta to pay statutory damages of $10,000 under RCW 49.44.211(7) for each violation of RCW 49.44.211(3).

H. Award Nejat the costs of this action, along with reasonable attorneys' fees, as provided by Section 706(k) of Title VII, 42 U.S.C. § 2000e-5(k); the WLAD, RCW 49.60.030(2); and the Silenced No More Act, RCW 49.44.211(7).

I. Any other relief the Court may deem just and appropriate.

DATED this 27th day of September 2024.

*s/Kathleen Phair Barnard*
Kathleen Phair Barnard, WSBA No. 17896
Darin M. Dalmat, WSBA No. 51384
Marina Multhaup, WSBA No. 58877
**BARNARD IGLITZIN & LAVITT LLP**
18 W Mercer St, Suite 400
Seattle, WA 98119
Tel: (206) 257-6002
Fax: (206) 378-4132
barnard@workerlaw.com
dalmat@workerlaw.com
multhaup@workerlaw.com

*Attorneys for Plaintiff*

COMPLAINT– Page 20